JEREMY M. DELICINO - 9959
Attorney for Defendant
10 West Broadway, Suite 650
Salt Lake City, Utah 84101
Telephone: (801) 364-6474
Facsimile: (801) 364-5014

___

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH, CENTRAL DIVISION

___

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | : | |
| Plaintiff, | : | DEFENDANT'S SENTENCING MEMORANDUM |
| | : | |
| v. | | |
| | : | Case No. 2:05-CR-892 TC |
| LARRY STODDARD, | | |
| | : | |
| Defendant. | | |

___

The defendant, by and through his attorney of record, Jeremy M. Delicino, hereby submits this memorandum to provide information intended to assist the Court in fashioning a sentence "sufficient but not greater than necessary" to achieve the statutory purposes of punishment.

**INTRODUCTION**

The Supreme Court in <u>United States v. Booker</u>, 125 S.Ct. 738 (2005) restored the district court's ability to fashion a sentence tailored to the individual circumstances of the case and defendant by requiring courts to consider factors other than the sentencing range set forth in the United States Sentencing Guidelines. Indeed, under Section 3553(a), courts *must* sentence below the applicable range if such a sentence would be sufficient to achieve the purposes of punishment.

While many courts have suggested that the sentencing guidelines remain persuasive, a

1

mechanistic reliance on the guidelines–which actually prohibit the consideration of some relevant factors–could be construed as an abdication of the sentencing court's responsibility under Booker and 18 U.S.C. § 3553. Indeed, even before the Supreme Court's decision in Booker, one of the seminal cases interpreting the guidelines was Koon v. United States, 116 S.Ct. 2035 (1996). Central to the holding in Koon was the understanding that judges were able to base a departure on *any* ground not specifically proscribed by the Guidelines.[1] Further, implicit in the Supreme Court's holding in Koon was that sentencing courts will be confronted with a myriad of factors that the guidelines are incapable of contemplating. Now that sentencing courts are untethered by the constraints imposed by the guidelines, factors previously disfavored or prohibited may be uniquely relevant under the factors set forth in § 3553.

As the Court is well aware, the sentencing guideline range is but one factor that this Court must consider; Booker requires that the court also consider (1) the nature and circumstances of the offense and the history of and characteristics of the defendant; (2) the kinds of sentences available; (3) the need to avoid unwarranted sentencing disparity; and (4) the need to provide restitution. Booker, 125 S.Ct. At 765-65; 18 U.S.C. § 3553(a)(1), (a)(3), (a)(6-7). In addition, Booker established a new, independent limit on the sentence that may be imposed. The primary sentencing mandate of Section 3553(a) states that courts must impose the minimally sufficient sentence to achieve the statutory purposes of punishment–justice, deterrence, incapacitation, and rehabilitation:

> The court shall impose a sentence *sufficient, but not greater that necessary*, to comply with the purposes set forth in [18 U.S.C. § 3553(a)(2)].

---

[1] See Koon, 116 S.Ct. at 2053 (explaining that judges may "consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue").

18 U.S.C. § 3553(a) (emphasis added). This so-called "parsimony provision" is not simply a factor to be considered in determining the appropriate sentence, but rather represents a cap above which the Court is *statutorily prohibited* from imposing–even when a greater sentence is recommended by the sentencing guidelines. See United States v. Denardi, 892 F.2d 269, 276-66 (3rd Cir. 1989) (Becker, J., concurring in part, dissenting in part).

The defendant in this case asks the court to consider his unique situation before imposing a sentence that is "sufficient but not greater than necessary." More specifically, the defendant submits that his physical ailments warrant a departure from the prescribed guideline in this case. Because of these medical difficulties, which will be detailed below, the defendant respectfully submits that a sentence of home confinement is reasonable under Booker and likewise complies with the statutory sentencing factors that this court must consider.

## Medical Background

The defendant's medical history is detailed in paragraphs 37-42 of the presentence report. As noted in the PSR, the defendant currently suffers from trigeminal neuralgia[2], abdominal angina, chronic sinusitis due to previous osteomyelitis[3], osetoarthritis, and depression/insomnia. In order

---

[2] Trigeminal Neuralgia is a chronic pain condition that causes extreme, sporadic, or sudden burning or shock-like face pain that can last anywhere from a few seconds to as long as a few minutes per episode. According to the National Institute for Neurological Disorders and Stroke website, "the intensity of pain can be physically and mentally incapacitating." See http://www.ninds.nih.gov/disorders/trigeminal_neuralgia/trigeminal_neuralgia.htm. In addition, the attacks often worsen over time, with fewer pain-free periods between recurrences. As the website further details, "[t]he disorder is characterized by recurrences and remissions, and successive recurrences may incapacitate the patient. Due to the intensity of the pain, even the fear of an impending attack may prevent activity." Id.

[3] Osteomyelitis is an inflammation or swelling of bone tissue that is usually the result of infection.

3

to treat these ailments, the defendant takes a number of medications, including the following: fentanyl patches; morhpine sulfate; lortab; ultram; topamax; lunesta; phenegran; claritin; imitrex; remeron; and aspirin. In addition, the defendant's son, Andrew, suffers from Muscular Dystrophy. The defendant is the primary caretaker for his son's medical needs when he is home.

<u>Because of the Defendant's Debilitating Physical Condition, A Sentence of Home Confinement is Justified by Both Traditional Departure Analysis and Post-*Booker* Considerations</u>.

Section 5H1.4 of the United States Sentencing Guidelines provides that the physical condition of a defendant may be relevant in determining whether a sentence should be outside the applicable guideline range.[4] If the defendant can demonstrate that he or she has an extraordinary physical impairment, a downward departure may be considered.[5] The court in United States v.

---

[4] Section 5H1.4 reads in part, "[p]hysical condition or appearance, including physique, is not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range. However, an extraordinary physical impairment may be a reason to impose a sentence below the applicable guideline range..."

[5] The defendant has framed his analysis according to the traditional departure framework in place before <u>Booker</u>. As the court is well aware, however, this approach does not confine the Court's analysis to determining whether a departure should be granted pursuant to the sentencing guidelines. Now that the sentencing guidelines are advisory, this court is free to impose a sentence departing from the advisory guideline range if it determines that such a sentence is reasonable in light of the factors set forth in § 3553. <u>See</u>, <u>e.g.</u>, <u>United States v. Seiber</u>, 2005 WL 1801614 (E.D. Tenn. July 29, 2005) (rejecting a downward departure for extremely poor health of 69 year old widow of veteran convicted of sale of oxycontin, where guidelines were 97-121 months and minor prior convictions, and imposing non-Guideline <u>Booker</u> sentence of probation).

In addition, section 5H1.4 does not mandate that a defendant's physical condition is relevant only to the decision whether to impose imprisonment. The Tenth Circuit has held that departure under § 5H1.4 is not limited to physical impairments so severe as to warrant a non-custodial sentence. Indeed, § 5H1.4 allows downward departures any time a sentencing court is presented with sufficient evidence of impairment even if the impairment warrants only a reduction in, not the elimination of, the term of imprisonment. <u>United States v. Slater</u>, 971 F.2d 626 (10th Cir. 1992); <u>see also</u> <u>United States v. Ghannam</u>, 899 F.2d 327, 329 (4th Cir. 1990) (noting that "[s]ection 5H1.4's observation that extraordinary impairment might justify an

Slater, 971 F.2d 626 (10th Cir. 1992), set out a two-part test to determine whether a departure is warranted under § 5H1.4. First, the district court should make a factual finding to determine whether the defendant's physical disabilities constitute an extraordinary physical impairment. Slater, 971 F.2d at 635. Second, the court must decide whether the condition warrants a shorter term of imprisonment or another alternative to confinement. Id.

With respect to the first prong of the test set forth in Slater, the defendant clearly meets the standard enunciated by the court as his assortment of physical ailments constitute an extraordinary physical impairment. The court in United States v. Rabins, 63 F.3d 721, 729 (8th Cir. 1995) suggested that a physical ailment that may become life-threatening could constitute an extraordinary physical impairment. Faced with a defendant arguing for departure because he had acquired AIDS, the court noted that, "[c]ertainly any condition which is or will in all likelihood become life-threatening is a serious physical impairment, and the attendant circumstances of AIDS and its precursors can just be described as 'extraordinary.'" Id.

In addition, courts have repeatedly granted downward departures for physical impairments that are not terminal and pose fewer immediate health problems than do Mr. Stoddard's ailments. The Second Circuit upheld a downward departure based on a "failing physical condition" in United States v. Tillem, 906 F.2d 814, 829 (2nd Cir. 1990). Similarly, the court in United States v. Little, 736 F.Supp. 71 (D.New Jersey), *aff'd*., 919 F.2d 137 (3rd Cir. 1990), affirmed a departure based on a defendant's chronic pulmonary disease. Likewise, the court in United States v. McClean, 822 F.Supp. 961, 962 (E.D. New York 1993) held that "a downward departure [was] required on the

---

alternative to imprisonment does not preclude the possibility that impairment might also warrant a shorter sentence.").

grounds of [the] defendant's poor health and vulnerability" where the defendant's left leg had been crippled by polio when he was a child. The cumulative effect of the defendant's health problems should be considered "an extraordinary physical impairment," as required by § 5H1.4.

In the second prong of the test, it is incumbent on the court to decide whether the defendant's condition warrants a shorter term of imprisonment or another alternative to confinement. See Slater, 971 F.2d 626 (10th Cir. 1992). The Ninth Circuit, agreeing with Slater, has noted that the district court "may consider any number of circumstances," not just whether the Bureau of Prisons can accommodate the defendant's disability. United States v. Martinez-Guerrero, 987 F.2d 618, 620-21 (9th Cir. 1993). Indeed, the court in United States v. Maltese, 1993 WL 222350 (N.D. Ill.), granted a downward departure even though the "Bureau of Prisons [was] equipped to undertake the care and treatment of virtually any medical problem an inmate may have during the course of his incarceration." The court in Maltese acknowledged the government's argument that the BOP could treat the defendant's cancer, yet still granted a downward departure based on the defendant's physical impairment. Id. at 9-10. Similarly, even if the government can demonstrate that the BOP can effectively treat Mr. Stoddard's physical disabilities, the court may still depart downward from the sentencing guideline range.

As the court in Martinez-Guerrero explicitly suggested, a sentencing court may consider any factor it deems relevant to the term of imprisonment. In the instant case, the court should consider the fact that the defendant must suffer through his debilitative conditions in confinement as a mitigating factor when determining his sentence. See, e.g., United States v. Hammond, 37 F. Supp.2d 204, 208 (1999) (holding that the defendant was entitled to a downward departure since his condition resulted in a sentence more difficult to endure than customary incarceration). Enduring

6

debilitating and potentially life-threatening ailments without the support of family members and while one is in custodial confinement will result in a harsher sentence than one who is otherwise healthy during the period of incarceration.

Because the court is aware of the medical maladies that will affect Mr. Stoddard during his incarceration, a downward departure is an appropriate measure to ensure that his sentence adequately reflects the unique circumstances of his situation. Indeed, the unique physical condition presented by Mr. Stoddard sufficiently removes him from the heartland and makes a departure under either § 5H1.4 or § 5K2.0 appropriate. The policy statement of § 5K2.0 empowers a sentencing court to depart from the guidelines if the court finds "there exists an aggravating or mitigating circumstance of a kind, to a degree, not adequately taken into consideration" by the guidelines to be imposed. If the court finds that a departure under § 5H1.4 is not warranted, the court can still depart pursuant to § 5K2.0. See, e.g., United States v. Arize, 792 F.Supp. 920 (E.D. New York 1992) (relying on § 5K2.0 and 18 U.S.C. § 3553(b) to depart on the basis of pregnancy unknown to the defendant at the time of arrest). Certainly Mr. Stoddard's panoply of ailments are an example of the aggravating circumstance contemplated by § 5K2.0 and Koon, and the unique nature of his physical condition sufficiently removes him from the heartland to warrant a downward departure.

Even if this court were to find that the defendant did not qualify for a traditional downward departure, the defendant believes that consideration under § 3553 warrants a non-incarceration sentence as well. The defendant's sentencing range contemplated by the guidelines is 12-18 months. Given the defendant's physical condition, the defendant suggests that a sentence imposing a term of 12-18 months home confinement would satisfy the requirements of § 3553. Indeed, one of the factors that a sentencing court must consider after Booker is the need for the sentence imposed to

"provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. § 3553(a)(2)(D). A sentencing court must also consider "the kinds of sentences available." 18 U.S.C. § 3553(a)(3).

The defendant submits that a sentence of home confinement adequately satisfies the § 3553 considerations, and does not subvert the traditional concerns of deterrence, punishment, and incapacitation. Not only does the defendant continue to suffer physically, but he has already endured the collateral consequence of losing his medical license. A sentence of home confinement also ensures that there will be no disruption in his regimen of medication, nor will there be a disruption in his frequently needed medical care. Furthermore, the defendant believes that, while the request for a sentence of home confinement represents a departure from the advisory guideline applicable in this case, the departure does not represent such a marked deviation that it undermines the propriety of the sentence. Lastly, by imposing a sentence of home confinement, the defendant will be able to provide assistance and medical care to his son suffering from muscular dystrophy.

DATED this 15th day of September006.

/s/ Jeremy M. Delicino
_____
JEREMY M. DELICINO
Attorney at Law

### CERTIFICATE OF SERVICE

I hereby certify that on this 15th day of September, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

**Mark Y. Hirata (E-Filer)**
Mark.Hirata@usdoj.gov erica.suarez@usdoj.gov

/s/ Brittany Bagley
_____